UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Evangeline Sommer, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) No. 17 CV 50134 |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) Magistrate Judge Iain D. Johnston ) ) ) |
|     Defendant. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

This is an appeal of a partially favorable disability benefits determination. The administrative law judge ("ALJ") found that plaintiff Evangeline Sommer was disabled under Listing 12.08 (personality and impulse-control disorders) because she had marked limitations in two of the four Cluster B personality categories (social functioning and concentration).[1] The ALJ found that this listing was met as of September 1, 2014. However, plaintiff had alleged that she was disabled on May 19, 2009. This appeal is about this five-year gap.

Although the ALJ's decision is long, it contains only a few brief explanations for why the ALJ chose the September 1, 2014 onset date. The primary and most clear-cut explanation was that this was the date when plaintiff first sought treatment with a psychiatrist, Dr. Irfan. The ALJ also offered a smattering of other rationales. The ALJ conclusorily stated that the medical record was "devoid" of any documentation that plaintiff had "serious" psychological problems before 2014. R. 1332. This latter conclusion was supposedly confirmed by psychologist Ellen Rozenfeld, who testified at the hearing. The ALJ acknowledged that plaintiff lacked insurance

---

[1] These problems were caused by her anxiety disorder, depressive disorder, and personality disorder, which were found to be severe impairments at Step Two. R. 1321.

1

before September 2014 but found this was no excuse because plaintiff could afford to continue her smoking habit. The ALJ also noted that, before September 2014, plaintiff socialized with friends, went to church, and did household chores (*e.g.* preparing meals, washing dishes). Finally, the ALJ noted that some doctors suspected plaintiff of malingering or drug-seeking. *See* R. 1325 (plaintiff was "well known to the emergency room, as she presented frequently for various complaints").

Plaintiff argues that these explanations were incomplete; that the ALJ failed to apply SSR 83-20 by not further developing the record to see if an earlier onset date could be inferred from a later diagnosis; and that the ALJ mischaracterized Dr. Rozenfeld's testimony. Based on these arguments, the Court finds that a remand is warranted.[2]

First, contrary to the ALJ's assertion that record was "devoid" of evidence showing that plaintiff had any serious psychological problems before September 2014, plaintiff has pointed to evidence in her opening brief that arguably casts doubt on this conclusion. This evidence includes the following: plaintiff was taking Diazepam for anxiety in 2009 and was advised to see psychiatry; she also was taking Valium and Paxil at various times; she was observed to be nervous/anxious or depressed at multiple doctor visits; she had been banned by a few physicians because she was "extremely histrionic"; she reported crying all the time; and she was given a psychiatry referral for worsening mood instability. Dkt. #11 at 7-8. The ALJ did not acknowledge this evidence in the analysis portion of the decision, thus raising a question as to how she viewed it. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (an ALJ may not ignore a line of evidence contrary to his conclusion).

---

[2] This case was previously remanded in 2014 based on arguments about plaintiff's physical impairments. *See* R. 1429-1441. This appeal only concerns the mental impairments and specifically their relation to the onset date.

Second, the ALJ did not adequately confront the possibility that plaintiff's many doctor visits during the 2009 to 2014 period, which were ostensibly for an assortment of diffuse physical ailments, were being driven by her undiagnosed psychological conditions. At the hearing, Dr. Rozenfeld stated that she was "surprised" that plaintiff had not been diagnosed with a somatoform disorder.[3] Dr. Rozenfeld observed that plaintiff "is not psychologically minded in the sense of having a good sense of how psychological issues are playing out, and she seems to focus on physical health issues as the problem[.]" R. 1384-85. This and other statements suggest that Dr. Rozenfeld believed that these ailments were possibly disguised psychological problems and that plaintiff may have lacked the awareness to understand their causes and realize the need to seek psychiatric treatment.[4] *See generally Lewis v. Astrue*, 2012 WL 5342669, *7 (N.D. Ill. Oct. 25, 2012) ("Federal courts have long recognized that, in the context of mental illness, insight can play an important role in evaluating the claimant's credibility; and, by definition, a claimant with poor insight cannot be expected to understand the true nature of his impairments."). In this regard, plaintiff testified at the hearing that she was leery of seeing psychologists because of negative experiences with them "throughout [her] childhood" and that she preferred talking to religious advisers. R. 1366.

Third, the ALJ also never gave serious consideration to plaintiff's explanation that she lacked insurance. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (an ALJ cannot "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin"). The ALJ addressed this contention with

---

[3] The Mayo Clinic's website provides the following overview: "Somatic symptom disorder is characterized by an extreme focus on physical symptoms—such as pain or fatigue—that causes major emotional distress and problems functioning. You may or may not have another diagnosed medical condition associated with these symptoms, but your reaction to the symptoms is not normal."

[4] Dr. Rozenfeld, however, was unwilling to state conclusively that plaintiff had a somatoform disorder, a reluctance that seemed to stem more from her belief that, as a testifying expert, it was not her "role" to "make diagnoses" in the first instance. R. 1391.

3

the following two-sentence analysis: "It was suggested that financial constraints limited treatment options. While this may be true to some extent, the claimant was able to fund a costly tobacco habit." R. 1331. However, this explanation is insufficient. *See Eskew v. Astrue*, 462 F.3d. Appx. 613, 616 (7th Cir. 2011) (remanding: "[The ALJ] summarily dismissed Eskew's explanation for not taking prescribed medication simply by noting her ability to buy cigarettes during that time—even though the record contains no information about either the price of her medication or the cost of her cigarette habit."). Likewise here, the ALJ had no information about the prices of cigarettes or psychotherapy, and it seems unlikely they are comparable.

Fourth, the ALJ periodically referred to concerns about malingering. It is unclear how much weight the ALJ placed on these comments. But malingering is a serious charge, carrying with it the potential to "dominate all [other arguments] like the proverbial skunk thrown in the jury box." *Potega v. Berryhill*, 2017 WL 2461549, *4 (N.D. Ill. June 7, 2017). The ALJ did not consider the possibility that plaintiff's malingering, as well as her confrontational approach with doctors generally, were evidence of her personality disorder. *See, e.g., Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("Spiva's being vague or evasive when questioned about his illness could be evidence of malingering, but equally could reflect the effects of his psychotic mentation."). At the hearing, Dr. Slodki, who testified about plaintiff's physical problems, seemed to recognize this issue. *See* R. 1375 ("the record does indicate in some areas consideration of the possible malingering and I think that should be addressed by the psychiatric expert specifically"). Plaintiff argues that malingering and over-reporting of symptoms are "exactly" the type of history that would be expected given Dr. Irfan's later diagnoses (*e.g.* marked difficulties in social functioning). Dkt. #11 at 9. In short, plaintiff argues that the

malingering allegations affirmatively support her arguments. This issue should be investigated more closely.

Fifth, the Court agrees with plaintiff that Dr. Rozenfeld's testimony was more equivocal than the ALJ suggested. Dr. Rozenfeld made several statements that support the view that plaintiff's problems were present before September 2014. As noted above, Dr. Rozenfeld raised the possibility of a somatoform disorder. Also, she recounted how plaintiff had "*a history of* unstable relationships" and "a tendency to become angry, explosive in situations" and had a "neediness in her relationships. R. 1385 (emphasis added). There was nothing in this testimony suggesting that Dr. Rozenfeld believed that these problems only emerged around September 2014. Insofar as this Court can tell, the incidents being referred to all occurred before that date. Stated differently, Dr. Rozenfeld did not identify any triggering event to explain why plaintiff's condition supposedly deteriorated in the latter half of 2014. The ALJ asked Dr. Rozenfeld about the onset date in the following exchange:

> Q  Okay. So now we have an alleged onset date of 2009. When do you think is the earliest that she was at that listing level?
>
> A  Well, in terms of—she was seen for the [consultative examination] back in '09, and then the record kind of goes dormant. She was really not seeking any kind of psychiatric care. She started with [Dr. Irfan] in 2014, which, you know, I just [INAUDIBLE] even more so on the mental health issues. In terms of looking at it from a physical perspective and the string of ER visits, I'm really not in a position—I don't know whether one can relate this back to her going into the emergency room for these physical health issues. While it may be stemming from psychiatric issues in terms of really—
>
> Q  Okay. What's the earliest onset date supported by the documented evidence she gave us?
>
> A  Well, like I said, 2009 and then it goes dormant until 2014.

R. 1386. The ALJ interpreted this testimony as being an affirmative statement that plaintiff did not meet the listing level before 2014. *See* R. 1332 ("The medical expert determined the record

did not support a finding the claimant had serious psychologically engendered limitations prior to September 1, 2014. As correctly pointed out by the medical expert, the record was devoid of documented treatment for, or notable difficulties accruing to, the claimant's mental state."). The Court, however, finds the above testimony is ambiguous or at least not fully explained. The ALJ stopped the questioning at the point quoted above, and did not ask Dr. Rozenfeld to clarify her position. The ALJ also did not consider the possibility that, even if the record were "dormant," this was because of the lack of insurance.

Sixth, the ALJ's statement that plaintiff was able to do certain daily activities *before* 2014 is not probative without some evidence that she could *not* do them *after* 2014. These activities included going to church and socializing with friends. However, at the 2015 hearing, plaintiff stated that she was still going to church and socializing with friends. R. 1362. Also, Dr. Rozenfeld noted that plaintiff was "certainly [] living independently" at the time of the hearing. R. 1385. For these reasons, this rationale was not supported by substantial evidence based on the current record.

The above arguments are sufficient to warrant a remand. The ALJ should investigate further whether there is evidence to support plaintiff's theory that an earlier onset date could be inferred. Whatever conclusion is reached should be supported by a more detailed explanation. Plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: October 26, 2018  By: _____
Iain D. Johnston
United States Magistrate Judge